1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

8

FOR THE EASTERN DISTRICT OF CALIFORNIA

9
10

| | |
|---|---|
| ROMAN SCANLON, on behalf of himself, the general public, and those similarly situated,<br><br>Plaintiff,<br><br>   v.<br><br>CURTIS INTERNATIONAL LTD., and TECHNICOLOR SA,<br><br>Defendants. | No. 1:19-cv-00937-NONE-SKO<br><br>ORDER GRANTING TECHNICOLOR SA'S MOTION TO DISMISS<br><br>(Doc. No. 18) |

11
12
13
14
15
16
17
18

**INTRODUCTION**

19      Plaintiff Roman Scanlon initiated this action by filing a class action complaint on May 3, 2019

20  against defendants Curtis International Ltd. and Technicolor SA (collectively, "defendants") in the

21  Merced County Superior Court.  (Doc. No. 1-4.)  Therein, based upon his allegation that defendants

22  misrepresented to him and others similarly situated that they were purchasing digital home theater

23  projectors with specific brightness ratings, he asserted causes of action for:  1) fraud, deceit, and/or

24  misrepresentation; 2) breach of contract[1]; 3) violation of California's Consumer Legal Remedies Act,

25  California Civil Code § 1750, *et seq.*; 4) violation of California's False Advertising Law, California

26
27

---

28  [1]  The caption page of plaintiff's complaint includes a breach of contract claim.  (Doc. No. 1-4 at 2.)
However, the body of the complaint contains no allegations in support of a breach of contract claim.
(*See generally* Doc. No. 1-4.)

1

Business & Professions Code § 17500, *et seq.*; 5) negligent misrepresentation; 6) unjust enrichment[2]; and 7) unfair, unlawful, and/or deceptive trade practices, California Business & Professions Code § 17200, *et seq.*  (Doc. No. 1-4 at 2.)  Plaintiff seeks on behalf of himself and others similarly situated compensatory damages, punitive damages, restitution, injunctive relief, and declaratory relief.  (*Id.* at 28–30.)  Defendants timely removed the case to this federal court on July 9, 2019 under 28 U.S.C. § 1332 and 28 U.S.C. § 1441.  (Doc. No. 1 at 2.)

On October 10, 2019, defendant Technicolor SA filed a motion to dismiss on the grounds that this court lacked personal jurisdiction over it.  (Doc. No. 18.)  Plaintiff Scanlon filed his opposition on December 4, 2019.  (Doc. No. 28.)  Defendant Technicolor SA filed its reply on December 1, 2019.  (Doc. No. 30.)

The court has determined the motion to dismiss is suitable for decision based on the papers under Local Rule 230(g) and, for the reasons explained below, will grant defendant Technicolor SA's motion to dismiss while also granting plaintiff leave to amend.

**FACTUAL BACKGROUND**

A.    **The Parties**

Plaintiff is a citizen of Merced, California.  (Doc. No. 1-4 ¶ 9.)  Defendant Technicolor SA is a French Société Anonyme (a type of public company), with its principal place of business and headquarters in Paris, France.  (*Id.* ¶ 11.)  Plaintiff alleges that defendant Technicolor SA "does business through Technicolor USA, Inc., a corporation incorporated under the laws of Delaware with its principal place of business in Indianapolis, Indiana."  (*Id.*)  However, defendant Technicolor SA's "General Counsel Corporate" filed a declaration stating that Technicolor USA, Inc. ("Technicolor USA") is a Delaware corporation with its principal place of business and headquarters in Los Angeles, California.  (Doc. No. 18-2 ¶ 7 (Declaration of Ségolène Simonin-du Boullay).)  Defendant Technicolor SA is the parent company of more than 110 companies worldwide.  (*Id.* ¶ 7.)  Technicolor SA owns 100% of the stock of its subsidiary, Technicolor USA.  (*Id.*)  Technicolor USA is not a party to this action.  (*See generally* Doc. No 1-4.)

---

[2]  Plaintiff has previously voluntarily dismissed his unjust enrichment claim.  (Doc. Nos. 19–21.)

According to the Boullay Declaration, defendant Technicolor SA has no headquarters, offices, or employees in California.  (Doc. No. 18-2 ¶ 6.)  Boullay asserts that Technicolor SA is not incorporated in California, is not licensed to conduct business in California, and does not sell any goods or services in California.  (*Id.*)  Boullay avers that defendant Technicolor SA and Technicolor USA are separately managed, with separate accounting books and records, separately pay their taxes, and have separate offices and employees.  (*Id.* ¶ 8.)  Boullay further asserts in her sworn declaration that defendant Technicolor SA does not have any input or control over Technicolor USA's daily operations.  (*Id.*)  Boullay contends that all of defendant Technicolor SA's trademark-licensing activities, including quality control and inspection of trademark use, are undertaken by Technicolor SA's employees in France.  (*Id.* ¶ 13.)

"Technicolor's" website "affirmatively represents that "Technicolor" has its 'North American headquarters in Los Angeles.'"  (Doc. No. 28 at 6 (citing Doc. No. 28-2, Ex. 2).)  Plaintiff has also submitted "Technicolor's LinkedIn page" listing Paris as its headquarters and two locations in California (*id.* at 7 (citing Doc. No. 28-2, Ex. 4)), and a Google Maps screen image showing "at least seven Technicolor offices in California" (*id.* (citing Doc. No. 28-2, Exs. 4, 5)).  According to plaintiff, "Technicolor" has over 3,000 employees in the United States and is recruiting employees for jobs in California.  (*Id.* (citing Doc. No. 28-2, Exs. 7–9.)  Four members of "Technicolor's" thirteen-member Executive Committee are in California.  (*Id.* (citing Doc. No. 28-2, Ex. 8).)  Plaintiff submits as evidence in support of his opposition to the pending motion Technicolor SA's 2016 Registration Document filed with French regulators.  (*Id.* (citing Doc. No. 28-2, Ex. 10).)  Plaintiff contends that "Technicolor's" "Internal Audit Department consists of 12 auditors" located in France, California, and Indianapolis.  (*Id.* (citing Doc. No. 28-2, Ex. 10 at 30).)

The 2016 Registration Document provides that "unless otherwise stated, the 'Company' refers to Technicolor SA and 'Technicolor' and the 'Group' refers to Technicolor SA together with its consolidated affiliates."  (Doc. No. 30-1 ¶ 20 (quoting Doc. No. 30-3, Ex. B at 5).)  In Boullay's reply affidavit, Boullay states "[a]s a parent Company, Technicolor SA has the legal obligation under French Law to disclose a declaration of extra-financial performance in its Registration Document.  For this

/////

1  purpose, Technicolor SA has to compile the data collected from all of its subsidiaries."  (Doc. No. 30-1 ¶

2  17.)

3          Defendant Curtis International Ltd. ("Curtis") is a Canadian corporation with its principal place

4  of business in Mississauga, Ontario.  (Doc. No. 1-4 ¶ 10.)  Plaintiff alleges that defendant Technicolor

5  SA is the parent company of defendant Curtis.  (*Id.* ¶ 3.)  However, defendant Technicolor SA's

6  "General Counsel Corporate" states that defendant Technicolor SA is not the parent company of

7  defendant Curtis.  (Doc. No. 18-2 ¶ 9.)  Rather, Technicolor SA contends that defendant Curtis has a

8  license ("the License") to use the "RCA" trademark in Canada and the United States for various

9  household and consumer electronic devices.  (*Id.* ¶ 10.)  Defendant Curtis and RCA Trademark

10  Management[3] negotiated the License in Canada and France.  (*Id.*)  RCA Trademark Management

11  subsequently and duly assigned its rights and obligations under the License to Technicolor SA.  (*Id.*)

12  B.     **The Claims**

13          In his complaint plaintiff alleges as follows.  Defendant Curtis manufactures and distributes

14  consumer electronics, which defendant Curtis sells under the RCA trademark through a licensing

15  agreement with Technicolor SA.  (Doc. No. 1-4 ¶ 27.)  Defendants have marketed and sold projectors

16  that purportedly have a brightness of 2,000 lumens[4] or more.  (*Id.* ¶ 29.)  Defendants induced plaintiff

17  and others similarly situated to purchase select RCA-brand home-theater projectors[5] by misrepresenting

18  the projectors' lumens ratings.  (*Id.* ¶¶ 2, 5, 6.)  According to plaintiff:  "Had Plaintiff and those

19  similarly situated been adequately informed and not intentionally deceived by Defendants, he would

20  have acted differently by, without limitation, not purchasing (or paying less for) the [Accused

21  Products]."  (*Id.* ¶ 73.)

22          In contrast, in her declaration the Boullay states:  "Technicolor SA did not design or manufacture

23  any of the Accused Products.  Technicolor SA did not distribute or sell any of the Accused Products in

24

25  _____

26  [3]  Neither defendant Technicolor SA nor plaintiff elaborate on "RCA Trademark Management."

27  [4]  "Lumens" appear to be a measure for brightness.  (*See generally* Doc. No. 1-4; Doc. No. 28 at 6.)

28  [5]  The RCA-brand home theater projector models at issue are:  (i) RPJ116; (ii) RPJ129; and (iii) RPJ136
   (collectively, the "Accused Products").  (Doc. No. 1-4 ¶¶ 2, 5, 6.)

1   any State in the United States.  Technicolor SA did not choose, or have any input into, the 'lumens'

2   terminology used for the Accused Products."

3   (Doc. No. 18-2 ¶ 12.)

4   **LEGAL STANDARDS**

5   Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may seek dismissal of

6   an action for lack of personal jurisdiction.  In opposing such a motion to, the burden of proof to show

7   that jurisdiction is appropriate lies with the plaintiff.  *See Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir.

8   2015); *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010); *Boschetto v. Hansing*,

9   539 F.3d 1011, 1015 (9th Cir. 2008).  When a defendant's motion to dismiss is to be decided on the

10  pleadings, affidavits, and discovery materials, the plaintiff need only make a *prima facie* showing that

11  personal jurisdiction exists in order for the action to proceed.  *See Picot*, 780 F.3d at 1211; *Love*, 611

12  F.3d at 608; *Boschetto*, 539 F.3d at 1015.

13  In determining whether plaintiff has met his burden to show personal jurisdiction, the court

14  accepts plaintiff's allegations as true, and any conflicts between parties over statements contained in

15  affidavits must be resolved in the plaintiff's favor.  *Love*, 611 F.3d at 608; *Boschetto*, 539 F.3d at 1015;

16  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  However, in meeting its

17  burden a plaintiff "cannot simply rest on the bare allegations of its complaint."  *Amba Mktg. Sys., Inc. v.*

18  *Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).

19  "Where, as here, there is no applicable federal statute governing personal jurisdiction, the law of

20  the state in which the district court sits applies."  *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482,

21  1484 (9th Cir. 1993); *see also Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d

22  1199, 1205 (9th Cir. 2006) (*en banc*) (same).  "California's long-arm statute allows courts to exercise

23  personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United

24  States Constitution."  *Core-Vent Corp.*, 11 F.3d at 1484; *see also* Cal. Civ. Proc. Code § 410.10 ("A

25  court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this

26  state or of the United States.")*; Love*, 611 F.3d at 608–09.  Thus, only constitutional principles constrain

27  the jurisdiction of a federal court in California.  *See Love*, 611 F.3d at 608–09; *Boschetto*, 539 F.3d at

28  1015; *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).

**DISCUSSION**

A.    **Motion to Dismiss for Lack of Personal Jurisdiction**

Under the Fourteenth Amendment's Due Process Clause, courts may exercise personal jurisdiction over nonresident defendants only so long as there exists sufficient "minimum contacts" between the defendant and the forum state.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980); *see also Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015); *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).  Maintenance of the suit must "not offend traditional notions of fair play and substantial justice."  *Yahoo!*, 433 F.3d at 1205 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Generally, there are two different types of personal jurisdiction which meet this due process standard:  general jurisdiction and specific jurisdiction.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.15 (1985); *Picot*, 780 F.3d at 1211.  Here, the parties dispute both general jurisdiction and specific jurisdiction.

1.    General Jurisdiction

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  *Goodyear Dunlop Tires Operations, S.A., v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317).  "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'"  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (internal citation omitted).  Thus, "[a] corporation that operates in many places can scarcely be deemed at home in all of them."  *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 965 (N.D. Cal. 2015) (quoting *Daimler AG*, 571 U.S. at 762 n.20).

Here, Technicolor SA is a French corporation with its principal place of business in Paris, France.  (Doc. No. 1-4 ¶ 11.)  Plaintiff argues, however, that Technicolor SA has a second headquarters in Los Angeles.  (Doc. No. 28 at 10.)  Plaintiff further contends that Technicolor SA's offices, "several permanent executives," and "hundreds of employees" located in California render this court's exercise of general jurisdiction over it proper.  (*Id.* at 11.)  The court finds this argument unpersuasive

/////

Technicolor SA is "at home" in France because it is incorporated in France and has its principal place of business in Paris, France.  *See Daimler AG*, 571 U.S. at 117, 137 (holding German corporation not subject to personal jurisdiction in California despite American indirect subsidiary's regional office in California and distribution of Daimler-manufactured vehicles to California dealerships).  Plaintiff's evidence does not demonstrate Technicolor SA's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home" in California to support general jurisdiction.  (Doc. No. 28 at 10 (internal citations omitted).)  Plaintiff's exhibit of the California Secretary of State's website showing *Technicolor USA*'s office in California does not demonstrate that defendant *Technicolor SA* has an office in California.[6]  (Doc. No. 28-2, Ex. 1.)  Plaintiff evidence of screen images of "Technicolor's" website purportedly showing its North American headquarters in Los Angeles and that "Technicolor" has job postings in Los Angeles[7] (Doc. No. 28-2, Exs. 2, 9), does not attribute those activities in California to *Technicolor SA*.[8]  (*See generally id.*)  Further, nothing in plaintiff's exhibits demonstrate that *Technicolor SA* has employees in California.  (*See generally* Doc. No. 28-2, Exs. 7–10.)  At best, "Technicolor's" 2016 Annual Report states that it has a "regional Treasury Department in Ontario

---

[6]  While plaintiff fails to request judicial notice, the court nevertheless takes judicial notice of the California Secretary of State's website.  *See Rupert v. Bond*, 68 F. Supp. 3d 1142, 1155 (N.D. Cal. 2014) (taking judicial notice of government website when neither party disputes the website's authenticity or accuracy of the information displayed therein).

[7]  While certain of plaintiff's exhibits may be in the public record, courts generally should not accept as true the matters asserted therein.  *See* Fed. R. Evid. 201; *Nat. Res. Def. Council v. Zinke*, 347 F. Supp. 3d 465, 479 n.10 (E.D. Cal. 2018) (taking judicial notice of public records for their content, not for the truth of that content).  Here, however, the parties do not appear to dispute the accuracy of statements on "Technicolor's" website or representations of "Technicolor's" corporate structure in the 2016 Registration Document.  The court will therefore take judicial notice of the website because defendant Technicolor SA does not object to its inclusion; rather, defendant argues the website's job postings and office locations are not attributable to Technicolor SA.

[8]  Plaintiff has submitted evidence of "Technicolor's" LinkedIn page and a Google Maps printout of "Technicolor's" reflecting offices in California.  (Doc. No. 28-2, Exs. 4–5, 7.)  The exhibits are not incorporated within plaintiff's complaint, so cannot be considered under the incorporation by reference doctrine.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  The court declines to take judicial notice of these exhibits because their contents are not generally known within the court's jurisdiction, and LinkedIn is not a source whose accuracy cannot be reasonably questioned.  *See Ibey v. Taco Bell Corp.*, No. 12-cv-0583-H, 2012 WL 2401972, at *1 (S.D. Cal. June 18, 2012) (citing Fed. R. Civ. P. 201(b)).

1  (California – U.S.)" and that the Internal Audit Department consists of 12 auditors in France, California,

2  and Indiana.[9]  (Doc. No. 28 at 7; Doc. No. 28-2, Ex. 10 at 30, 34.)  However, by plaintiff's own

3  admission, the 2016 Registration Document provides that "unless otherwise stated, the 'Company' refers

4  to Technicolor SA and 'Technicolor' and the 'Group' refers to Technicolor SA together with its

5  consolidated affiliates."  (Doc. No. 28 at 7; Doc. No. 28-2, Ex. 10 at 29, 34.)  *See also Evangelista v.*

6  *Just Energy Mktg. Corp.*, No. SACV 17-02270-CJC, 2018 WL 4850380, at *4 (C.D. Cal. June 11, 2018)

7  ("These [annual] reports, which refer to "Just Energy" collectively, and do not specify [defendant's]

8  activities, do not support jurisdiction.  '[T]he cases are unanimous that consolidated reporting is standard

9  business practice and will not support jurisdiction in the absence of evidence establishing an agency

10  relationship.'") (internal citations omitted).  Overall, none of the activities that are alleged by plaintiff to

11  have taken place in California can be attributed to defendant Technicolor SA.  *See Daimler AG*, 571

12  U.S. at 137 (rejecting plaintiffs' arguments that subsidiary's activities of distributing German

13  corporation's vehicles to California rendered general jurisdiction appropriate).

14      Instead, the Boullay Declaration states that Technicolor SA is a separate and distinct entity from

15  Technicolor USA, with separate management teams, offices, and accounting books and records.  (Doc.

16  No 30-1 ¶ 5.)  Technicolor SA and Technicolor USA pay taxes separately, and Technicolor SA does not

17  have any input into, or control over, the daily operations of Technicolor USA.  (*Id.*)  Additionally, Ms.

18  Boullay declares that "Technicolor SA is not licensed to conduct business in the State of California" and

19  "Technicolor SA does not sell any goods or services in the State of California."  (*Id.* ¶ 8.)  Courts have

20  granted motions to dismiss for lack of personal jurisdiction in favor of defendants based on similar

21  declarations.  *See, e.g.*, *Evangelista*, No. SACV 17-02270-CJC, 2018 WL 4850380, at *6 (granting a

22  Canadian parent corporation's motion to dismiss for lack of personal jurisdiction where its declaration

23  stated that defendant was a "legally and factually separate corporate entity," "maintain[ed] separate

24

---

25  [9]  Despite plaintiff's failure to request judicial notice, the court will take judicial notice of the
    Technicolor 2016 Registration Document contained in plaintiff's exhibit 10 and a complete copy of the
26  Registration Document contained in defendant's reply exhibit B.  (Doc. No. 28-2, Ex. 10; Doc. No. 30-
    3, Ex. B.)  Defendant Technicolor SA does not object to the accuracy of the statements contained therein
27  and also relies upon the report in its reply declaration.  (*See generally* Doc. No. 30; Doc. No. 30-3, Ex.
    B.)  *See also Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 995 n.11 (granting request for
28  judicial notice of defendant's annual report).

1   books and records and does not share any employees or assets with the other named Defendants . . . .");

2   *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1295 (S.D. Cal. 2003) (granting defendant's motion to

3   dismiss where it stated in a declaration it "does no actual business in California, has never done business

4   in California, does not own property in California, does not have an office in California, and is not

5   registered to conduct business in California.  Defendant . . . contends that it does not have officers or

6   employees in California.").  Therefore, the court will decline to exercise general jurisdiction over

7   defendant Technicolor SA.

8                                          a.      *Alter-Ego Liability*

9          Alternatively, plaintiff argues that the court should exercise general jurisdiction over defendant

10   Technicolor SA through an alter ego theory.  "In narrow circumstances federal courts will find that a

11   corporation is the alter ego of another by 'pierc[ing] the corporate veil] and attribut[ing] a subsidiary's

12   [contacts with] the forum state to its parent company for jurisdictional purposes.'"  *Corcoran*, 169 F.

13   Supp. 3d at 983 (quoting *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995)).  To survive a

14   Rule 12(b)(2) motion on an alter ego theory, the plaintiff must make a *prima facie* showing that both:

15   (1) there is a unity of interest and ownership between the corporations such that their separate

16   personalities do not actually exist, and (2) treating the corporations as separate entities would result in

17   injustice.  *Ranza*, 793 F.3d at 1073.  The unity-of-interests prong requires "a showing that the parent

18   controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former."

19   *Id.*  It requires "pervasive control" that is satisfied when a parent corporation "dictates every facet of the

20   subsidiary's business—from broad policy decisions to routine matters of day-to-day operation."  *Id.*

21   "Total ownership and shared management personnel are alone insufficient to establish the requisite level

22   of control."  *Id.* (citing *Harris Rutsky & Co.*, 328 F.3d at 1135).

23          Courts analyze nine factors when examining the first requirement of the alter ego test:

24                  [1] the commingling of funds and other assets of the entities, [2] the
                    holding out by one entity that it is liable for the debts of the other, [3]
25                  identical equitable ownership of the entities, [4] use of the same offices
                    and employees, [5] use of one as a mere shell or conduit for the affairs of
26                  the other, [6] inadequate capitalization, [7] disregard of corporate
                    formalities, [8] lack of segregation of corporate records, and [9] identical
27                  directors and officers.

28   /////

1   *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 955 (N.D. Cal. 2015).

2          Even accepting his assertions as true, plaintiff's evidence satisfies only the third and ninth of

3   these factors.  Defendant Technicolor SA admits it wholly owns Technicolor USA.  (Doc. No. 18-2 ¶ 7.)

4   The *Technicolor Group*'s Executive Committee has four members who are based in California, one of

5   whom is Tim Sarnoff, who is also a Director of *Technicolor USA*.  (Doc. No. 28 at 7; Doc. No. 30-1 ¶¶

6   5, 21.)  Plaintiff argues that "the Executive and Management Committees appear to be comprised of

7   representatives from both companies."  (Doc. No. 28 at 13.)  However, Technicolor SA's sworn

8   declaration affirms that none of the four California-based individuals on the *Technicolor Group*'s

9   Executive Committee is an employee of *Technicolor SA*.  (Doc. No. 30-1 ¶ 21.).  Even if the

10  Technicolor Group's Executive Committee was attributable to defendant Technicolor SA,[10] "it is

11  considered a normal attribute of ownership that officers and directors of the parent serve as officers and

12  directors of the subsidiary."  *Gerritsen v. Warner Bros. Entm't, Inc.*, 116 F. Supp. 3d 1104, 1138–39

13  (C.D. Cal. 2015) (emphasis omitted); *see also Corcoran*, 169 F. Supp. 3d at 982–83 (rejecting alter ego

14  theory despite plaintiffs' satisfaction of third, fourth, and ninth factors where parent and subsidiary had

15  overlapping officers and directors, and parent's public filings showed parent provided management and

16  administrative services to support overall operations of all segments of parent, and parent's website

17  presented itself as one integrated company); *Stewart*, 81 F. Supp. 3d at 954–56 (finding that a showing

18  of the third, fourth, and ninth factors "even when considered together, are not sufficient to support a

19  finding of a unity of interest among" the corporate entities).  "[S]eparate corporate entities presenting

20  themselves as one online does not rise to the level of unity of interest required to show companies are

21  alter egos."  *Corcoran*, 169 F. Supp. 3d at 984 (citing *Moody v. Charming Shoppes of Delaware, Inc.*,

22  No. C 07-06073 MHP, 2008 WL 2128955, at *3 (N.D. Cal. May 20, 2008) ("[g]eneric language on

23  [company's] website and in its press releases simply do not rise to the day-to-day control required to

24  impute the subsidiary's contacts to the parent")); *see also Apple Inc. v. Allan & Assocs. Ltd.*, — F. Supp.

25  3d —, 2020 WL 1492665, at *6 (N.D. Cal. Mar. 27, 2020) (rejecting plaintiff's alter ego theory where

26  /////

27

28  ───────────────
[10]  The Technicolor "'Group' refers to Technicolor SA together with its consolidated affiliates."  (Doc. No. 30-1 ¶ 20.)

"one LinkedIn post 'treated' [two entities] as the same company . . . and that [parent defendant] owned both companies.").

Therefore, plaintiff's evidence does not satisfy the unity-of-interests requirement of the alter ego test.  *See Harris Rutsky & Co.*, 328 F.3d at 1135 (holding facts establishing that parent wholly owned subsidiary, parent and subsidiary shared same officers and directors, co-employed staff, and shared physical office did not satisfy unity-of-interests requirement of alter ego test).  Accordingly, the court need not address the second requirement of the alter ego test.  Plaintiff has not made a *prima facie* showing that defendant Technicolor SA and Technicolor USA are alter egos of each other.[11]  Accordingly, the court declines to exercise general jurisdiction over defendant Technicolor SA.

### 2.   Specific Jurisdiction

Specific jurisdiction exists where the litigation is derived from obligations that "arise out of or are connected with the [company's] activities within the state."  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).  In determining whether a court has specific jurisdiction over a non-resident defendant, the following three-prong test is to be employed:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot*, 780 F.3d at 1211 (citing *Schwarzenegger*, 374 F.3d at 802); *see also Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1023 (9th Cir. 2017).  Plaintiff has the burden of establishing the first two of

---

[11]  Plaintiff does not directly address defendant's argument that an agency theory cannot establish general or specific personal jurisdiction.  (Doc. No. 18-1 at 22–23.)  Rather, plaintiff merely suggests that he should be allowed to argue an alter ego theory because he has alleged that defendants "acted in a joint venture and common enterprise; that they acted as agents, representatives, and partners of each other, and that they ratified each and every act with respect to the complaint."  (Doc. No. 28 at 13 n.4.)  The court need not analyze the agency theory.

these prongs, and a "strong showing on one axis will permit a lesser showing on the other." *Yahoo!*, 433 F.3d at 1210.  If plaintiff establishes the first two prongs, then the burden shifts to defendant to set forth a "compelling case" that the exercise of jurisdiction would not be reasonable.  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011); *see also Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988).

Where the cause of action at issue lies in tort, courts analyze the purposeful direction factor using the "*Calder* effects" test.  *See Schwarzenegger*, 374 F.3d at 802, 805 (citing *Calder v. Jones*, 465 U.S. 783 (1984)); *Wine Grp. LLC v. Levitation Mgmt.*, LLC, No. 2:11-cv-1704-WBS, 2011 WL 4738335, at *4 (E.D. Cal. Oct. 6, 2011).  Under *Calder*, the "effects" test "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citations omitted)

Here, plaintiff argues that the first two prongs of the purposeful direction analysis are satisfied because he has alleged that he "observed the packaging in Walmart in California" and this demonstrates that "Technicolor intended to sell the products in California by advertising the products in Plaintiff in California."  (Doc. No. 28 at 15.)  Moreover, plaintiff argues defendant Technicolor SA "no doubt knows that the harm is likely to be suffered in California, where its products were distributed for sale," and that "this case relates specifically to Technicolor's California-focused advertising" because the putative class comprises only of persons "who purchased an RCA Projector 'while residing in California.'"  (*Id.* (quoting Doc. No. 1-4 ¶ 53).)

Defendant Technicolor SA counters through sworn declarations that it did not manufacture the accused products, did not distribute or sell any of the accused products in California, and had no input into the lumens terminology used in the accused products.  (Doc. No. 18-2 ¶ 12; Doc. No. 30-1 ¶¶ 7–8.) Plaintiff's mere conclusory allegations that defendant Technicolor SA "no doubt [knew] that the harm is likely to be suffered in California" where he "observed the packaging" at a Walmart in California do not address the averments of defendant Technicolor SA's sworn declarations set forth above.  *See Amba Mktg. Sys.*, 551 F.2d at 787 (holding plaintiff "cannot simply rest on the bare allegations of its complaint.").  Moreover, for the reasons discussed in the general jurisdiction analysis above, plaintiff's

1  evidence of "Technicolor's" passive website[12] and LinkedIn listing fail to attribute the alleged

2  California-based activities to defendant Technicolor SA.  Therefore, plaintiff has not satisfied its burden

3  of establishing that defendant Technicolor SA purposefully directed its activities in California.

4  Accordingly, the court need not analyze the second and third prongs of the specific jurisdiction analysis.

5  Specific jurisdiction is not present here.

6                           a.    *Consent*

7         Finally, plaintiff argues that specific jurisdiction is appropriate here because defendant

8  Technicolor SA "admits that California is the appropriate forum for these claims involving the

9  brightness of RCA projectors" because it consented to transfer to the Central District of California in

10  another action.  (Doc. No. 28 at 8, 15 (citing *Epson Am., Inc. v. Curtis International Ltd.*, No. 18-cv-

11  3134-JMC (D.S.C.)).)  However, a "defense on the merits in a suit brought by one party cannot

12  constitute consent to suit as a defendant brought by different parties."  *Dow Chem. Co. v. Calderon*, 422

13  F.3d 827, 835 (9th Cir. 2005); *see also Cottle v. W. Skyways, Inc.*, No. 1:17-cv-00049-DAD-BAM, 2017

14  WL 1383277, at *8 (E.D. Cal. April 18, 2017) (rejecting plaintiffs' argument that court had specific

15  jurisdiction over a defendant who had consented to jurisdiction in another federal court in California);

16  *Fahmy v. Jay-Z*, No. CV 07-5715-CAS-PJW, 2008 WL 4792383, at *4 (C.D. Cal. Oct. 29, 2008)

17  (rejecting plaintiff's argument that defendant waived personal jurisdiction because it consented to same

18  court's exercise of personal jurisdiction in another matter).  Thus, defendant Technicolor SA's prior

19  involvement in other litigation before federal courts in California is insufficient to establish personal

20  jurisdiction here.

21  B.    **Request for Jurisdictional Discovery**

22         In opposing the pending motion, plaintiff requests that if the court were to find that there is

23  presently insufficient factual information establishing general jurisdiction over defendant Technicolor

24  SA, that it permit limited discovery to ascertain whether general jurisdiction exists.  (Doc. No. 28 at 11–

25

26      [12]  Plaintiff briefly argues that "Technicolor's" website referencing a unique California law demonstrates

27  reasonableness of exercising specific jurisdiction over defendant Technicolor SA.  (Doc. No. 28 at 16.) The court need not reach the reasonableness analysis because plaintiff has failed to satisfy the first two

28  prongs of the specific jurisdiction test.  In any event, the "Technicolor" website appears to be passive in nature.

14.)  Discovery should ordinarily be granted where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Butcher's Union Local No. 498, United Foods & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)). However, "[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (internal quotations omitted); *see also Boschetto*, 539 F.3d at 1020 (affirming denial of request for jurisdictional discovery "based on little more than a hunch that [discovery] might yield jurisdictionally relevant facts").  Thus, limited discovery should not be permitted merely to conduct a "fishing expedition." *Mackovich v. United States*, No. 1:06-cv-00422-SMS (PC), 2008 WL 2053978, *1 (E.D. Cal. May 13, 2008) (denying discovery where plaintiff made "no showing that if further discovery were allowed, the outcome of the motion to dismiss would be affected") (citing *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003)).

Here, plaintiff has not met his burden of establishing the existence of personal jurisdiction over defendant Technicolor SA.  Moreover, plaintiff has not explained how limited discovery would likely reveal continuous and systematic contacts that would give rise to general jurisdiction.  In his opposition to the pending motion, plaintiff apparently bases his request on the theory that limited discovery might reveal additional facts suggesting that Technicolor SA's and Technicolor USA's "funds/assets or debts are commingled, that the subsidiary is inadequately capitalized, [and] that corporate records are not segregated." (Doc. No. 28 at 13.)  Plaintiff also apparently hopes to obtain through jurisdictional discovery "paychecks of Technicolor's California employees" to determine whether they "are from Technicolor SA or Technicolor USA, Inc.," arguing that such facts "are critical to Plaintiff's ability to prove that Technicolor SA is, in fact, the alter ego of Technicolor USA, Inc. and is thus subject to personal jurisdiction in California." (*Id.*)  However, as discussed above, plaintiff has provided no evidence of *Technicolor SA*'s operations in California nor alleged an economic, intermingled

/////

/////

14

relationship between defendant Technicolor SA and Technicolor USA in California.[13]  Technicolor SA's "General Counsel Corporate" has affirmed in two sworn declarations that Technicolor SA does not have any employees in California and maintains separate accounting books and records from Technicolor USA.  (Doc. No. 18-2 ¶¶ 6, 8; Doc. No. 30-1 ¶¶ 5–16.)  Plaintiff has therefore not established that jurisdictional discovery is justified on this basis, and the court will not permit the speculative discovery plaintiff seeks.  *See Boschetto*, 539 F.3d at 1020 (holding that district court did not abuse its discretion in denying request for discovery that was based on "little more than a hunch that it might yield jurisdictionally relevant facts"); *Nimbus Data Sys., Inc. v. Modus LLC*, No. 14-cv-04192 NC, 2014 WL 7387200, at *7 (N. D. Cal. Dec. 29, 2014) (denying request for jurisdictional discovery "based entirely on the speculation that discovery might reveal facts that support general jurisdiction").

### CONCLUSION

For the reasons set forth above, Defendant Technicolor SA's motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction (Doc. No. 18) is GRANTED with leave to amend.  Plaintiff shall file an amended complaint curing the deficiencies noted above or a notice informing the court that he will not amend within 21 days of the date of service of this order.

IT IS SO ORDERED.

Dated:  __**June 10, 2020**__          _____
                                    UNITED STATES DISTRICT JUDGE

---

[13]  Plaintiff argues it is entitled to take discovery regarding its alter ego theory because the "complaint states that Defendants acted in a joint venture and common enterprise; that they acted as agents, representatives, and partners of each other, and that they ratified each and every act with respect to the complaint."  (Doc. No. 28 at 13 n.4.)  These conclusory allegations are insufficient.