GUTRIDE SAFIER LLP
SETH A. SAFIER (State Bar No. 197427)
TODD KENNEDY (State Bar No. 250267)
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 336-6545
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*
ROMAN SCANLON

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROMAN SCANLON, on behalf of himself, the general public, and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CURTIS INTERNATIONAL, LTD.,<br><br>Defendant. | Case No. 1:19-cv-00937-NONE-SKO<br><br>**ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**<br><br>(Doc. 81) |

### 1. PURPOSE AND DEFINITIONS

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure ("Federal Rules"), the Local Rules of the Eastern District of California ("Local Rules"), and any other applicable orders and rules. Except as otherwise agreed by the Parties, technical terms used herein and in discovery requests and responses shall follow or be defined by the "The Sedona Conference Glossary: E-Discovery and Digital Information Management" (Fifth Edition).

### 2. COOPERATION

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter, including with respect to proportionality of discovery, reasonable efforts to ensure discovery of important information, and early and prompt communication regarding discovery issues.

### 3. ESI LIAISONS

On or before January 8, 2021, the Parties will identify persons knowledgeable about and who are responsible for discussing ESI discovery with each other. The Parties may subsequently substitute such designated persons or identify additional persons knowledgeable about ESI. Such persons will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, harvesting/collection, search methodologies, and production of ESI in this matter. These persons will be available as needed to confer about ESI and to help resolve disputes without court intervention.

### 4. PRESERVATION

The Parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that:

(a) The Parties shall disclose information necessary to understand the current scope of preservation and whether any actions need to be taken to ensure appropriate preservation. In general, the Parties agree that ESI created or received before May 3, 2015, is not generally subject to preservation and harvesting for all discovery purposes, but this Order does

not relieve a party of its obligations to preserve and harvest ESI created before May 3, 2015, if the party is aware of ESI that is likely to contain relevant and discoverable information and if an efficient method might be identified to harvest such ESI relating to certain issues in this case;

(b) By January 15, 2021, the Parties will exchange (i) a list of the types of ESI they believe should be preserved, including non-custodial sources, *e.g.*, sharepoints, databases, e-mail servers, shared drives, backup tapes, etc., (ii) the number and identity of custodians, including the general job titles or descriptions of custodians, for whom they believe ESI should be preserved, *e.g.*, "Senior Marketing Manager," "Lead Product Manager," and "Director – Customer Service;" (iii) a general description of the default time periods for preservation for the categories of data above; and (iv) a description of any potentially relevant ESI data sources that the party is aware of having been lost or destroyed, and a description of the circumstances of such loss or destruction, if the ESI was potentially responsive and not duplicated on a readily accessible source. The Parties agree to produce or describe information governance and document retention policies or practices (*e.g.*, retention schedules or policies for electronic or hard copy documents, auto-delete functions, mailbox size limits, and advanced analytics) that may have an impact on the existence or accessibility of responsive documents or ESI. The Parties shall meet and confer in order to add, remove, or modify custodians, data sources, and search/harvest methodologies as reasonably necessary.

(c) The Parties will meet and confer and use best efforts to agree on data sources that are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B), and ESI from these sources will either not be preserved or be preserved but not searched, reviewed, or produced; and

(d) As additional data sources are identified as a result of investigation and/or discovery, the Parties may identify additional data sources that may or may not need to be searched or preserved pursuant to the foregoing. The Parties will meet and confer about preserving such ESI as any additional data sources are identified.

**5.     SEARCH**

The Parties recognize that a variety of search tools and methodologies, including but not limited to technology assisted review ("TAR") tools, exist and should be considered and discussed by the Parties. Where potentially responsive ESI shall be searched using search terms, the Parties agree to propose search terms they intend to employ to search for certain relevant and responsive documents. In the first instance, the producing party will propose search terms for the consideration of the receiving party.

Agreement on a search methodology does not relieve a Party of its obligation under the Federal Rules of Civil Procedure to conduct a diligent search and reasonable inquiry and produce all relevant and responsive documents of which a party is aware, regardless of whether they contain search terms or some other search methodology agreed to by the Parties or ordered by the Court. Discovery requests shall govern the scope of documents to be produced, subject to any agreements reached during the Parties' conferral, and search terms do not supplant discovery requests. To the extent a Party is aware of non-duplicative documents that are relevant, responsive, non-privileged, and reasonably accessible, such documents will be produced regardless of whether they contain search terms or some other search methodology agreed to by the Parties or ordered by the Court.

A Party may use TAR to sort documents for linear review without disclosure of that use. If a Party elects to use TAR to cull or otherwise limit the volume of unstructured ESI subject to linear review, a producing Party shall describe to a requesting Party the vendor and the TAR technology or tool being used, including a description of the TAR tool's procedures. Additionally, a producing Party need not conduct any additional review of information subjected to, but not retrieved by, a TAR tool as part of the identification of the subset of information that will be subject to review and production.

Nothing in this Order shall be construed as precluding a producing party from performing a privilege review to determine if certain documents should be withheld.

The Parties further agree that each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash

identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

**6.     PRODUCTION FORMATS**

With the exception of spreadsheets, presentation files, multi-media files and other native files that cannot be converted to image files, the Parties shall produce all relevant, responsive, and non-privileged ESI as Bates-stamped single-page 1-bit TIFF images with a DAT load file that enables the document to be uploaded and viewed using standard litigation support software in accordance with the provisions below. Unless excepted below, single page, 1-bit, black and white Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the producing party shall provide a higher quality TIFF image or the native or original file.

(a)     *Production Media*. The Parties shall produce documents in an encrypted format through electronic means, such as external hard drives, secure file sharing methods (*e.g.*, FTP), or readily accessible computer or electronic media (*e.g.*, CDs, DVDs) (collectively, "Production Media"), with explicit decryption instructions. Productions shall have the following four directories: (1) IMAGES for the images; (2) DATA for the .dat and .opt files; (3) TEXT for the extracted text/OCR files; and (4) NATIVES for any native Excel, Powerpoint, multi-media, or other files that cannot be understood reasonably unless displayed in native format. The producing party shall identify: (a) the Responding Party's name; (b) the production date; and (c) the Bates Number range of the materials contained on the Production Media.

(b)     *Color*. The Parties shall produce documents in color if the original of the produced document is in color. Color images should be produced as single page JPG files at 300dpi with JPG compression and a high-quality setting as to not degrade the original image.

(c)     *Unique IDs*. Images shall be produced using a unique file name that will be the Bates number of that page (*e.g.*, ABC000001.TIFF). The Bates number must appear on the face of the image and not obliterate, conceal, or interfere with any information from the source

document. Native files shall be produced using a name that will bear the production number and any confidentiality designation as well as the original file name (e.g., ABC000002_Confidential_OriginalFilename.xls).

(d) *Parent-Child Relationships*. Parent-child relationships (association between an attachment and its parent document) shall be preserved. The attachment(s) shall be produced adjacent to the parent document, in terms of Bates numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment.

(e) *Redactions*. If the Parties are redacting information from a page, they shall electronically "burn" the word "Redacted" onto the page or otherwise clearly indicate a redaction at or reasonably near to the location of the redaction(s), as set forth in the stipulated Protective Order in this matter. If documents that the Parties have agreed to produce in native format need to be redacted, the Parties agree to meet and confer in good faith on how to best produce the documents so that proper formatting and usability are maintained.

(f) *Confidentiality Designation*. Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

(g) *Metadata Fields*. The Parties shall provide the system generated and metadata fields (the "Production Fields") substantially similar to those set forth in **Exhibit A**, to the extent these fields are available.

(h) *Native Format*. The Responding Party shall produce spreadsheets (*e.g.*, Excel), presentation files (*e.g.*, PowerPoint), and any other materials not readily convertible to TIFF format (*e.g.* three-dimensional design files) in native format. To the extent that they are produced in this action, audio, video, and multimedia files will be produced in native format. If a native file originally had track changes, comments, or other collaborative change features turned on, the .TIF file will display those changes in the converted image file. Native files shall be produced

with a link in the NATIVEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in Exhibit A, to the extent these fields are available. For each native file produced, the production will include a *.tiff image slipsheet indicating the production number of the native file and the confidentiality designation and stating, "File Provided Natively" (or substantially similar). Native files will be produced in a separate folder on the production media. TIFF images of e-mail messages should include the BCC line. Upon request from the receiving party that any files be produced in native format (identified by Bates number), the Parties agree to meet and confer in good faith concerning such requests. A request for such production shall not be unreasonably denied. The Parties agree to meet and confer regarding a protocol for use of native files at depositions, hearings, or trial.

(i) *Text Files*. For each produced document, a document-level text file shall be provided in addition to the image files (TIFFs). The text of native files should be extracted directly from the native file and each text file will be named using its corresponding beginning bates number (*e.g.*, ABC000001.TXT). For ESI with redacted text, a commercially acceptable technology for Optical Character Recognition ("OCR") shall be used for all scanned, hard copy documents with redactions.

(j) *Physical/Hard Copy Documents*. Nothing herein shall relieve the Parties of any obligations they may have to search for responsive Documents in hard copy form. The Parties shall produce documents that exist solely in physical hard-copy format following this ESI Stipulation. The metadata shall indicate document breaks and identify the custodian or non-person custodial source from whom/where the document was collected. The documents should be logically unitized using reasonable best efforts. The ".tiff' files shall be subject to an OCR process. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. The Parties will meet and confer to address instances of undue burden and will work to negotiate an appropriate solution.

(k) *Databases and Other Structured Data*. The Parties shall meet and confer regarding the production format and scope of data contained in enterprise database or database

management system (*e.g.*, Oracle, SQL server, DB2), including the types of information stored in the database(s), the types of reports that can be generated from or for the data, whether there are existing and reasonably available reports that include the information, and whether the receiving Party will need any information in native form in order to ensure that any information produced is reasonably usable by the receiving party and that its production does not impose an undue burden. To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format.

(l) *Duplicates*. The Responding Party may use software to identify duplicate documents that are in files of individual or multiple Production Custodians. To the extent there are duplicate documents, the Responding Party need only produce a single copy of a responsive document, unless the Requesting Party reasonably requests the duplicate document for a legitimate reason. Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level only). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. De-duplication should be done across the entire collection (i.e., global level) and the CUSTODIAN and PATH fields should list each custodian and file path, respectively, separated by a semicolon. To accommodate for rolling productions, for ESI that is removed as a duplicate from earlier productions, the producing party should provide an overlay file along with or within a reasonable time after each production.

(m) *Email Threading*. Where multiple email messages are part of a single chain or "thread," a party is only required to produce the most inclusive message ("Last In Time Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the Last In Time Email. Only email messages for which the parent document and all attachments are contained in the Last In Time Email will be considered less inclusive email messages that need not be produced.

### 7. PHASING

The Parties agree to meet and confer concerning whether the production of responsive ESI should occur in phases, by prioritizing selected sources and/or custodians.

### 8. DOCUMENTS PROTECTED FROM DISCOVERY

(a) Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

(b) The producing party shall also provide a privilege log containing the categories, or fields, of information identified in Exhibit B hereto, to the extent available, unless otherwise agreed in writing or pursuant to a court order.

(c) Communications involving a party's counsel (including all attorneys, staff or other personnel) that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

### 9. MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated:  December 28, 2020                                   **GUTRIDE SAFIER LLP**


/s/Seth A. Safier/s/
Seth A. Safier
Todd Kennedy
100 Pine St., Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469
seth@gutridesafier.com
todd@gutridesafier.com

| | |
|---|---|
| 1 | Attorneys for Plaintiff Roman Scanlon |
| 2 | **MAYER BROWN LLP** |
| 3 | |
| 4 | /s/Jonathan W. Thomas/s/ |
| | JONATHAN W. THOMAS (pro hac vice) |
| 5 | jwthomas@mayerbrown.com |
| | A. JOHN P. MANCINI (pro hac vice) |
| 6 | jmancini@mayerbrown.com |
| 7 | 1221 Avenue of the Americas |
| | New York, NY 10020-1001 |
| 8 | Telephone: (212) 506-2500 |
| | Facsimile: (212) 849-5895 |
| 9 | jwtomas@mayerbrown.com |
| 10 | Attorneys for Curtis International, Ltd. |
| 11 | |
| | JOHN NADOLENCO (SBN 181128) |
| 12 | jnadolenco@mayerbrown.com |
| | 350 South Grand Avenue 25th Floor |
| 13 | Los Angeles, CA 90071 |
| | Telephone: (213) 229-9500 |
| 14 | Facsimile: (213) 625-0248 |
| 15 | |
| | CARMINE R. ZARLENGA (pro hac vice) |
| 16 | czarlenga@mayerbrown.com |
| | 1999 K Street NW |
| 17 | Washington, DC 20006 |
| | Telephone: (202) 263-3000 |
| 18 | Facsimile: (202) 263-5227 |
| 19 | |
| | KRISTINE YOUNG (pro hac vice) |
| 20 | kyoung@mayerbrown.com |
| | 71 South Wacker Drive |
| 21 | Chicago, IL 60606 |
| | Telephone: (312) 782-0600 |
| 22 | Facsimile: (312) 701-7711 |
| 23 | |
| | Attorneys for Defendant |
| 24 | Curtis International Ltd. |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

**ORDER**

The terms of the parties' above Stipulated Order are hereby approved and adopted.

IT IS SO ORDERED.

Dated:  **January 4, 2021**                    /s/ *Sheila K. Oberto*
                                                                       UNITED STATES MAGISTRATE JUDGE

**Exhibit A**

**Production Fields**

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| DOCID | Unique document reference (can be used for de-duplication). |
| BEGDOC | Bates number assigned to the first page of the document. |
| ENDDOC | Bates number assigned to the last page of the document. |
| BEGATTACH | Bates number assigned to the first page of the parent document in a document family (i.e., should be the same as BEGDOC of the parent document, or PARENTDOC). |
| ENDATTACH | Bates number assigned to the last page of the last child document in a document family (i.e., should be the same as ENDDOC of the last child document). |
| PARENTDOC | BEGDOC of parent document. |
| CHILDDOCS | List of BEGDOCs of all child documents, delimited by ";" when field has multiple values. |
| NATIVEFILE | Relative file path of the native file on the production media. |
| CUSTODIAN | Owner of the document or file. |
| FROM | Sender of the email. |
| TO | All to: members or recipients, delimited by ";" when field has multiple values. |
| CC | All cc: members or recipients, delimited by ";" when field has multiple values. |
| BCC | All bcc: members or recipients, delimited by ";" when field has multiple values. |
| SUBJECT | Subject line of the email. |
| DATERCVD | Date that an email was received. |
| TIMERCVD | Time that an email was received. |
| DATESENT | Date that an email was sent. |
| TIMESENT | Time that an email was sent. |
| ATTACHMENTS | List of filenames of all attachments, delimited by ";" when field has multiple values. |
| FOLDERLOC | Original folder path of the produced document. |
| FILENAME | Original filename of the produced document. |
| DOCEXT | Original file extension. |
| DOCTYPE | Name of the program that created the produced document. |
| TITLE | Document title (if entered). |
| AUTHOR | Name of the document author. |
| REVISION | Number of revisions to a document. |

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| DATECREATED | Date that a document was created. |
| TIMECREATED | Time that a document was created. |
| DATEMOD | Date that a document was last modified. |
| TIMEMOD | Time that a document was last modified. |
| FILESIZE | Original file size in bytes. |
| PGCOUNT | Number of pages per document. |
| MDHASH | MD5 hash value computed from native file (a/k/a file fingerprint). |

**Exhibit B**
**Privilege Log Fields**

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| PrivLog # (generic number) | Generic field for tracking purposes (i.e. 1, 2, 3). |
| Date/Time | The date of the parent document (for emails, this is date sent; for non-emails, this is date last modified). |
| Email Subject | Email subject. |
| Author | Author or sender of document (for emails, this is the From field; for non-emails, this is the person who created the file). |
| Recipients | Derived from the To field. |
| Other Recipients | Derived from the CC and BCC fields. |
| Document Type | General type of record (i.e., Outlook, PDF, PowerPoint Presentation). |
| Description | Description of Privilege Claim. |
| Privilege Claimed | Type of privilege claimed (i.e., Attorney-Client or Attorney Client - Work Product, etc.). |